# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| KLINKENBORG AERIAL SPRAYING AND SEEDING INC, <br><br> Plaintiff, <br><br> vs. <br><br> ROTORCRAFT DEVELOPMENT CORPORATION, ROTORCRAFT HOLDINGS, LLC, ROTORCRAFT SPARES, LLC, SELECT AVIATION SERVICES, INC., SELECT AVIATION HOLDINGS, LLC, SELECT TURBINE COMPONENTS, INC. and GARY FOX, INDIVIDUALLY, <br><br> Defendants. | CV–12–202–DLC-JCL <br><br> FINDINGS AND RECOMMENDATION |

Several of the above-named defendants in this contract case have moved under Federal Rule of Civil Procedure 55(c) to set aside the default entered against them. Because the moving defendants have established good cause for setting aside the entry of default, their motion should be granted.

**I.    Background**

The moving defendants in this case are all owned in whole or in part by Defendant Gary Fox, and specialize in acquiring, modifying, and restoring former military helicopters and components for use in the civilian sector.  In February and March 2012, Plaintiff Klinkenborg Aerial Spraying and Seeding, Inc. ("Klinkenborg") contracted to purchase two helicopters from Defendant Rotorcraft Development Corporation ("Rotorcraft Development").  Dkt. 1-1; 1-2.  Klinkenborg and Defendants thereafter became embroiled in a series of contractual disputes, and this lawsuit followed.

Klinkenborg filed its complaint against Fox individually, Rotorcraft Development, and the other corporate defendants on December 11, 2012, alleging several causes of action arising out of the purchase and sale of the two helicopters. Dkt. 1. Klinkenborg served five of the six corporate defendants – Rotorcraft Development, Rotorcraft Holdings, LLC, Select Aviation Services, Inc., Select Aviation Holdings, LLC, and Select Turbine Components, Inc. (collectively "Defendants")  – with a copy of the summons and complaint on December 27, 2012.  Dkt. 6 through 11.  Klinkenborg accomplished service on Rotorcraft Holdings, LLC by delivering a copy of the summons and complaint to its registered agent, attorney Nick Jones.  Dkt. 7.  Klinkenborg served Rotorcraft Development, Select Aviation Services, Select Aviation Holdings, and Select

Turbine Components by leaving copies of the summons and complaint at their place of business. Dkt. 31-3.

Based on the date of service, answers from these five Defendants were due on January 17, 2013. That deadline passed with no answer by Defendants, however, and on January 18, 2013, Klinkenborg moved for entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.[1] Dkt. 16. The clerk entered default against Defendants on January 23, 2013. Dkt. 17. Defendants have since moved to set aside the entry of default pursuant to Rule 55(c).

## II.   Analysis

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause...." Fed. R. Civ. P. 55(c). Whether to set aside the entry of default is within the court's discretion. *See O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994). In determining whether "good cause" is present, the court must consider three factors: "'(1)whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Brandt v. American Bankers Ins. Co. of Florida*,

---

[1] Klinkenborg did not seek entry of default against Fox or Rotorcraft Spares, LLC, neither of whom is party to the pending motion.

PAGE 3

653 F.3d 1108, 1111 (9th Cir. 2011) (*quoting Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

These factors are disjunctive, which means that the court is free to deny a motion to set aside an entry of default "if any of the three factors [is] true." *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004). The court is not required to do so, however, and may, in the exercise of its discretion, set aside a default even if it finds that one of the "good cause" factors is true. *Brandt*, 653 F.3d at 1111-12 (setting aside default notwithstanding fact that defendant acted culpably).

Entering "judgment by default is a drastic step," and one that the Ninth Circuit cautions is "appropriate only in extreme circumstances." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2011) (*quoting Falk*, 789 F.2d at 463). As a general rule, "a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091 (*quoting Falk*, 789 F.2d at 463). "Where timely relief is sought from a default...and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default...." *O'Connor*, 27 F.3d at 364 (*quoting Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986)). Nonetheless, the party seeking to set aside the entry of default bears the burden of showing that the

"factors favor vacating the judgment." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).[2]

   A.   Prejudice

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case" or "being forced to litigate on the merits." *TCI Group*, 244 F.3d at 701. The appropriate standard for the court to consider "is whether plaintiff's ability to pursue his claim will be hindered." *TCI Group* 244 F.3d at 701. Any delay caused by the default "must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI* Group, 244 F.3d at 701 (citation omitted).

Applying these standards here, there is no evidence that Klinkenborg will be prejudiced if the entry of default is set aside. Defendants' answers were due on January 17, 2013, and Klinkenborg moved for entry of default the next day. Dkt. 16. The clerk entered default on January 23, 2013, and Defendants made their first appearance in the case through counsel on the morning of January 24, 2013. Dkt. 19, 20. Defendants were represented by counsel at the preliminary injunction

---

[2] The Ninth Circuit views the "good cause" required for relief from the entry of default under Rule 55(c) and the "excusable neglect" required to set aside a default judgment under Rule 60(b)(1) as generally the same. *TCI Group*, 249 F.3d at 696; *see also Franchise Holdings II*, 375 F.3d at 926.

hearing later that day, and did not contest entry of the injunction. Dkt. 22. Defendants thus appeared in the case prepared to litigate on the merits just six days after their answers were due, and one day after default had been entered against them.

In the days that followed, the parties engaged in negotiations in an attempt to resolve their dispute and stipulated to an amended preliminary injunction. Dkt. 23; 25. Defendants moved to set aside the default on February 6, 2013 – two weeks after it had been entered by the clerk of court. Dkt. 28.

There is nothing to suggest that the short delay in Defendants' appearance in this case will have any prejudicial effect on Klinkenborg's ability to pursue its claims or result in any tangible harm, such as loss of evidence, discovery difficulties, or a greater opportunity for fraud or collusion. This case is still in its earliest stages, and any delay associated with setting aside the entry of default before a scheduling order has even been entered will be minimal.

Klinkenborg nonetheless argues it will be prejudiced if the default is set aside because Defendants may at some point disappear, refuse to litigate in good faith, or dissipate their assets. But these are all risks that Klinkenborg would have faced anyway in litigating this case on the merits, and have nothing to do with the minimal delay occasioned by Defendants' default. The Ninth Circuit has made clear that "merely being forced to litigate on the merits cannot be considered

PAGE 6

prejudicial...." *TCI Group*, 244 F.3d at 701. Setting aside the entry of default in this case will not prejudice Klinkenborg. Rather, doing so will simply restore "the parties to an even footing in the litigation" and allow this case to be decided on the merits. *TCI Group*, 244 F.3d at 701.

    B.    <u>Meritorious Defenses</u>

A party seeking to set aside a default "must present specific facts that would constitute a defense." *TCI Group*, 244 F.3d at 700 (citations omitted). As described by the Ninth Circuit, this burden is not an "extraordinarily heavy" one. *TCI Group*, 244 F.3d at 700. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094 (*quoting TCI Group*, 244 F.3d at 700). The question of whether those factual allegations are true "is not to be determined by the court when it decides the motion to set aside the default." *Mesle*, 615 F.3d at 1094 (*quoting TCI Group*, 244 F.3d at 700). "Rather, that question 'would be the subject of the later litigation.'" *Mesle*, 615 F.3d at 1094 (*quoting TCI Group*, 244 F.3d at 700).

Defendants have met their burden of offering a potentially meritorious defense. Klinkenborg's primary claim is that Defendants breached the aircraft purchase agreement by failing to timely deliver the two helicopters, one of the helicopter engines, and other critical parts. Dkt. 1. Defendants mount a number of

PAGE 7

defenses, one of which is that Klinkenborg and Rotorcraft Development executed an Amendment to the Aircraft Purchase Agreement in August 2012, which provided a full release for "any claims which the parties may have against each other." Dkt. 29-1, at 3. Klinkenborg argues that the Amendment is invalid for lack of consideration and because Klinkenborg signed the Amendment while under duress. Klinkenborg maintains it had been told by Rotorcraft Development "that if they did not sign [the Amendment] there was no way they would get their [helicopter] engine." Dkt. 31, at 16. Rotorcraft Development presents a different version of the events, however, and argues that the Amendment required no consideration to be binding and even it did, there was ample consideration. Dkt. 29, at 15. It is thus clear that the parties dispute the validity of the Amendment and its effect on Klinkenborg's claims. Whether Defendants will ultimately prevail on this defense is a question that can only be answered later in the litigation. *Mesle*, 615 F.3d at 1094. In the meantime, Defendants have identified legitimate legal issues and alleged facts that, if true, could operate as a meritorious defense.

Defendants also argue that, with the exception of Rotorcraft Development, none of them can be held liable for Klinkenborg's claims. Defendants point out that only Rotorcraft Development was a party to the aircraft purchase and sale agreements for the helicopters. Defendants maintain that although they "have

PAGE 8

common or similar ownership structure," they are all "distinct legal entities under Montana law" and so only Rotocraft Development has any "connection to Klinkenborg's claims." Dkt. 29, at 16-17. Klinkenborg disagrees, however, and argues that all Defendants may be held liable because they "are alter-egos of one another and/or Gary Fox in that they are undercapitalized, controlled by a single individual, and indistinguishably mixed and matched in performing the services of refurbishing helicopters." Dkt. 31, at 11. Once again, the parties dispute whether Defendants will be able to prevail on the defense they have raised. For purposes of determining whether to set aside the entry of default, however, it is sufficient that Defendants have asserted facts which, if later proved true, would be a defense to the action. Because Defendants have offered potentially meritorious defenses, this factor weighs heavily in favor of setting aside the default.

    C.    <u>Culpability</u>

A defendant's conduct is considered "culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697 (*quoting Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1292 (9th Cir. 1988)). "[T]he term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party,

PAGE 9

interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092 (*quoting TCI Group*, 244 F.3d at 697). "Neglectful failure to answer as to which the defendant offers a credible good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional'" under the Ninth Circuit's default cases, and so is not necessarily culpable. *TCI Group*, 244 F.3d at 697

Defendants argue their failure to answer by January 17, 2013, was not intentional and offer the following explanation. They point out that Fox was out of the country when Klinkenborg filed its lawsuit on December 11, 2012, and did not return until "[a] few days before" the clerk entered default on January 23, 2013. Dkt. 29, at 8 & 11. Defendants explain that Fox had returned to Africa during that period of time for two reasons: (1) "it was necessary for him to comply with United States immigration law," and (2) "his companies were substantially in need of cash infusion to pay immediately due accounts and Fox knew that he could return overseas and work himself as a helicopter mechanic in some very remote places in order to earn substantial additional funds for him to reinvest back into the companies." Dkt. 29, at 8. Defendants also explain that when Fox left the country, "he did not leave any one person with complete authorization to act on behalf of the companies." Dkt. 39, at 8. According to Defendants, Fox spent

PAGE 10

significant periods of time while he was gone "working in places, like rural Madagascar and Sri Lanka, which were without any communication abilities or where communications can be viewed as a threat or criminal activity." Dkt. 29, at 9. As Defendants explain it, this meant that "there were significant periods of time where nobody had authorization on behalf of the Moving Defendants, as Fox had no ability to communicate." Dkt. 29. At 9.

By the time Fox left for Africa in the fall of 2012, he and Defendants had been represented by the law firm of Garlington, Lohn & Robinson for close to a year. Dkt. 29, at 9; Dkt. 35, at 2 &3. At some point, Garlington apparently "informed Fox that it would have to withdraw from all representation if: (a) outstanding invoices were not brought current; and (b) a representative with ultimate authority was not identified for these periods of time that Fox was out of the country and outside of communications." Dkt. 29, at 9. Garlington withdrew from any further representation of Defendants and Fox on December 20, 2012 – nine days after Klinkenborg had filed its complaint and one week before Klinkenborg accomplished service on Defendants. Dkt. 35, at 2.

Klinkenborg moved for entry of default against Defendants on January 18, 2013, and default was entered by the clerk on January 23, 2013. Dkt. 16 & 17. Defendants explain that when Fox returned to the United States a few days before the entry of default, Garlington "agreed to re-engage and provide a limited scope

PAGE 11

representation of the Moving Defendants in this litigation." Dkt. 29, at 11. Garlington attorney Charles E. Hansberry filed a notice of appearance on January 24, 2013, and appeared later that day on Defendants' behalf at a preliminary injunction hearing. Dkt. 19, 20, & 22.

Defendants maintain that this "recitation of the facts" establishes that their failure to timely answer on January 17, 2013, was not intentional or culpable. Dkt. 29, at 11. The Court agrees that, as presented in their supporting brief, Defendants' explanation is a legitimate one that credibly negates any bad faith intent on their part to take advantage of Klinkenborg, interfere with judicial decision making, or otherwise manipulate the legal process.

But the Court cannot simply accept the assertions in Defendants' supporting brief as established facts of record. Defendants have not provided any evidentiary support for many of the factual statements in their brief. While Mr. Hansberry has submitted his own affidavit, the only facts he personally attests to are those related to Garlington's legal representation. Dkt. 35. Mr. Hansberry states, for example, that Garlington withdrew from representing Defendants between December 20, 2012, and January 23, 2013 – during which time Klinkenborg moved for and obtained the entry of default. Dkt. 35, at 2. But Mr. Hansberry says nothing about Fox's whereabouts during the relevant period, the reason for Fox's apparent trip to Africa, the nature of his work there, his inability to communicate from remote

PAGE 12

locations, or the fact that Fox apparently failed to designate anyone to act on the Defendants' behalf during his absence.  All of these facts are critical to the Defendants' explanation for their default.

Defendants may well be operating on the assumption that factual allegations are all that is required at this stage in the proceedings. While that is true for purposes of satisfying the "meritorious defense" requirement,[3] the same cannot necessarily be said when it comes to assessing the culpability of Defendants' conduct.  Unlike the meritoriousness of a party's legal defenses, which cannot be finally adjudicated until after the presentation of evidence later in the litigation, the question of whether Defendants acted culpably in defaulting can, and should be, finally resolved on the motion to set aside default.  Notably, however, Defendants have not submitted an affidavit from Fox to substantiate their explanation of the reasons for their default.

But even assuming this means that Defendants have not met their burden of showing that their conduct in failing to timely answer was not culpable, the first two *Falk* factors weigh conclusively in favor of setting aside the default.  As discussed above, Defendants have met their burden of showing they have potentially meritorious defenses, and setting aside the entry of default will not

---

[3] *Mesle*, 615 F.3d at 1094.

PAGE 13

cause Klinkenborg any prejudice. Particularly in light of the strong policy favoring resolution of cases on the merits, the default entered against Defendants should be set aside.

## III. Conclusion

Because Defendants have established good cause for setting aside the default entered against them,

IT IS RECOMMENDED that Defendants' Motion to Set Aside Default be GRANTED.

DATED this 15th day of March, 2013.

_____
Jeremiah C. Lynch
United States Magistrate Judge